**J. F. PRITCHARD & COMPANY,**
Plaintiff,

v.

**DOW CHEMICAL OF CANADA,
LIMITED,** Defendant.

No. 17922-4.

United States District Court,
W. D. Missouri, W. D.

Aug. 27, 1971.

---

43.   Petitioner's Memorandum, p. 17.

Allan L. Bioff, James F. Duncan, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for plaintiff; Thomas R. McDade, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel.

John C. Thurlo, Swanson, Midgley, Jones, Eager & Gangwere, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER DISMISSING CAUSE WITHOUT PREJUDICE

ELMO B. HUNTER, District Judge.

This matter is presently before the Court upon the motion of the defendant, Dow Chemical of Canada, Limited (Dow), pursuant to Rule 12, F.R.Civ.P., to quash service of process and to dismiss this cause for lack of personal jurisdiction. Alternatively, defendant Dow seeks a dismissal based upon the doctrine of *forum non conveniens*. Both parties have submitted to the Court voluminous suggestions and counter-suggestions, along with numerous exhibits and affidavits supporting their respective positions. On July 22, 1970, a hearing was held in the matter, and subsequently, both sides have been given a substantial period of discovery with regard to defendant's pending motion to dismiss. The Court now deems the matter as fully submitted.

### Background

This is an action brought by J. F. Pritchard & Company, as assignee of its Canadian subsidiary, Pritchard Canadian Limited, to recover $339,000.00 allegedly owing the subsidiary as the result of work performed under a contract between the subsidiary and defendant Dow. Under that contract, Pritchard Canadian Limited agreed to design, engineer, and completely construct an anhydrous ammonia plant for defendant Dow at a location in Sarnia, Ontario, Canada. This work was originally scheduled to have been completed on June 1, 1965. However, some disagreement arose between defendant Dow on the one hand, and Pritchard Canadian Limited, J. F. Pritchard & Company, and certain major

equipment suppliers on the other, over plant operational deficiences claimed by defendant Dow. As a result, formal notice of acceptance of the plan was not given by Dow until July 18, 1969.

During the interim, and for a subsequent period of time, representatives of Pritchard Canadian Limited and its parent company, J. F. Pritchard & Company, met with Dow representatives in an attempt to resolve the claimed design and construction deficiencies. Although sometime during that period Dow advised Pritchard Canadian Limited that it intended to commence legal action over the claimed deficiencies, at the request of Pritchard Canadian Limited, the parties proceeded with further meetings and discussions aimed at a settlement of the contract differences. The parties continued to meet extensively through December of 1969 until, on December 18, 1969, representatives of defendant Dow were advised that J. F. Pritchard & Company, as assignee of the contract from the Canadian subsidiary, had commenced suit in this Court. Immediately thereafter, on December 19, 1969, defendant Dow initiated suit in the Supreme Court of Ontario, Canada against the original contracting party, Pritchard Canadian Limited; its parent corporation, J. F. Pritchard & Company; certain equipment suppliers, Joy Manufacturing Company and Ingersoll-Rand Corporation; and two individuals, R. M. Harris and Walter W. Deschner.[1] Thus, within a two-day period, suits involving similar, if not identical issues were filed in this Court and in the Supreme Court of Ontario, Canada.

Shortly after the filing of this action, defendant Dow filed its motion to dismiss based upon the following grounds: (1) that this Court lacked personal jurisdiction over the defendant; (2) that the assignment from Pritchard Canadian Limited to its parent corporation was collusive within the meaning of the statutory provisions of 28 U.S.C. § 1359; and (3) that any jurisdiction this Court might have should be declined under the doctrine of *forum non conveniens*.

## Personal Jurisdiction

In its complaint, plaintiff alleges that "defendant is subject to the jurisdiction of this Court pursuant to R.S.Mo. § 506.-500, V.A.M.S., and process can be served upon defendant at Sarnia, Ontario, Canada, pursuant to R.S.Mo. § 506.510, V.A.M.S." Missouri Revised Statute § 506.500 (1967) reads, in pertinent part as follows:

"Any * * * corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such * * * corporation * * * to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this state."

As grounds in opposition to the assumption of personal jurisdiction by this Court over the defendant under Section 506.500, defendant presents the following contentions: (a) that defendant did not transact business within the State of Missouri within the meaning of Section 506.500 subsequent to its enactment; (b) that plaintiff has failed to plead sufficient facts to show that this Court has personal jurisdiction over the defendant; and (c) that the assumption of personal jurisdiction by this Court would offend defendant's constitutionally-protected right to due process of law in that the requisite "minimum contacts" are lacking in this cause.

As to contention (a), defendant claims that the "transacting business" language of Section 506.500 carries no broader meaning than the earlier "doing business" concept which existed in Missouri

---

1. Defendant states that it had advised Pritchard Canadian Limited on numerous occasions that it intended to commence action in the Canadian courts over the claimed deficiencies in the Sarnia plant and that Pritchard Canadian Limited requested postponement of any litigation so that their differences could be resolved extrajudicially.

law prior to the enactment of Section 506.500. Defendant contends that this is the only possible interpretation of the statute which would allow retrospective application of it. It is defendant's further contention that, under prior Missouri authority, it clearly was not "doing business" within the State of Missouri before the enactment of Section 506.500.

The decisions of this Court and of the courts of Missouri which have followed the enactment of Section 506.500 are directly contrary to defendant's position as outlined above. These statutory sections have been found to be remedial and procedural, and, therefore, retrospective. Adams Dairy Company v. National Dairy Products Corp., 293 F.Supp. 1135 (W.D. Mo.1968); Scheidegger v. Greene, 451 S.W.2d 135 (Mo.1970); State ex rel. Nichols v. Fuller, 449 S.W.2d 11 (St.L. Ct.App.1969). As recently stated by the Missouri Supreme Court in *Scheidegger v. Greene, supra,* 451 S.W.2d at page 138:

> "The sections in question [§§ 506.500, 506.510, and 506.520] are remedial and procedural. They do not grant substantive rights. They create no new cause of action. They merely provide a new procedural method of obtaining jurisdiction over a person, firm or corporation outside this state as to any cause of action arising from the commission of a tortious act within this state. They relate to the service of process, the purpose of which is to confer jurisdiction over the person of the defendant. They are remedial, and a statute is not retrospective if it but provides a new remedy." (Citations omitted)

Furthermore, although Section 506.500 has been held to be remedial and procedural, for the purposes of obtaining personal jurisdiction, it has significantly broadened the former "doing business" concept of Missouri law to expressly include "the transaction of *any* business within [the] state." (emphasis added). See: American Hoechst Corp. v. Bandy Laboratories, Inc., Civil Case No. 17,352–2, (W.D.Mo.1970) (unreported) and

cases cited therein; State ex rel. Deere and Company v. Pinnell, 454 S.W.2d 889 (Mo.1970); Senate Majority Leader William B. Waters, *State Legislative Developments,* 20 J.Mo.B. 452, 455 (October, 1967).

■ In determining whether defendant has made sufficient "minimum contacts" with the forum to obtain personal jurisdiction over it, five factors must be considered: (1) the nature and quality of the contacts with Missouri; (2) the quantity of those contacts; (3) the relationship of the cause of action to those contacts; (4) the interest of Missouri in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. Thompson v. Ecological Science Corporation, 421 F. 2d 467, 469 (8th Cir. 1970); Electo-Craft Corporation v. Maxwell Electronics Corp., 417 F.2d 365 (8th Cir. 1969); Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir. 1965). And, from the facts adduced at the hearing and revealed by the record, it is clear that defendant Dow made sufficient contacts with the State of Missouri to satisfy at least the first four elements mentioned above. The record in this case, including the evidentiary material adduced at the hearing, reveals that during the years 1964 to 1966, several conferences were held in Kansas City, Missouri, between representatives of defendant Dow and personnel of plaintiff J. F. Pritchard & Company concerning the design, engineering and construction of the anhydrous ammonia plant in Sarnia, Ontario, Canada. Some of those meetings occurred prior to the final agreement between Pritchard Canadian Limited and Dow Chemical of Canada. Furthermore, frequent telephone conferences were held between Dow representatives in Canada and J. F. Pritchard representatives in Missouri. Also, some of the work required by the contract was performed by J. F. Pritchard & Company personnel in Kansas City, Missouri. Under these circumstances, although the number of actual separate physical contacts with Missouri were not numerous, the meetings be-

tween Dow representatives and J. F. Pritchard & Company representatives contributed to the consummation and execution of the contract in question. Thus, these contacts were sufficient in quality and quantity to satisfy the due process requirements. *Compare:* Thompson v. Ecological Science Corp., *supra;* American Hoechst Corp. v. Bandy Laboratories, Inc., *supra.* Because J. F. Pritchard & Company is a Missouri corporation which performed certain functions under the contract in issue, it is also clear that the State of Missouri has a sufficient interest in providing a forum for litigation. Thompson v. Ecological Science Corp., *supra.* Since the fifth and final element, the convenience or inconvenience to the parties, has a direct bearing upon defendant's claim of *forum non conveniens,* it will be discussed at a later point in connection with that contention.

### The Assignment

Under the provisions of 28 U.S.C. § 1359, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment * * * has been improperly or collusively made * * * to invoke the jurisdiction of such court." It is the contention of defendant Dow that the assignment from Pritchard Canadian Limited to J. F. Pritchard & Company was "collusive" within the meaning of 28 U.S.C. § 1359. Conversely, plaintiff J. F. Pritchard & Company urges that the assignment was a "real and substantial one permanently conveying all of the assignor's interest for good and adequate consideration." In support of its position, plaintiff has submitted to the Court the affidavit of W. A. Krause, president of J. F. Pritchard & Company and Pritchard Canadian Limited, to the effect that the

assignment was made "to provide collateral security" for certain indebtedness of the subsidiary corporation.

Notwithstanding the affidavit of Mr. Krause and the recital of the assignment document, that the assignment was primarily motivated by the desire of the parties to the assignment to invoke the jurisdiction of this Court is evident from the objective circumstances of that assignment. On November 24, 1969, while settlement negotiations continued between representatives of J. F. Pritchard & Company and Pritchard Canadian Limited and representatives of Dow Chemical of Canada, Pritchard Canadian Limited, the original contracting party, assigned its interest in its accounts receivable from the contract to its parent corporation, J. F. Pritchard & Company. At the time of the assignment, defendant Dow was not notified of the assignment, although Dow was allegedly responsible for the ultimate proceeds from the assigned accounts receivable.[2] Less than one month later, the assignee, J. F. Pritchard & Company brought this action to recover those proceeds. Furthermore, the assignment was never recorded by the assignee in Missouri as required by the Uniform Commercial Code to "perfect" the claimed security interest.[3] Finally, aside from this particular assignment, J. F. Pritchard & Company has never taken an assignment from Pritchard Canadian Limited or any other of its subsidiaries to secure an indebtedness to the parent corporation.

■■■ The motivation of the parties underlying the assignment is not, however, the sole criteria for determining whether that assignment is "collusive" under Section 1359. See: National Surety Corp. v. Inland Properties, Inc., 286 F.Supp. 173, 183–184 (E.D.Ark. 1968), aff'd per curiam 416 F.2d 457

---

2. Since Dow Chemical of Canada did not receive written notice of the assignment until after this suit was filed, the validity of this assignment is somewhat questionable under Canadian law. See: Section 54 of the Conveyancing and Law of Property Act, R.S.O.1960, cc. 66; De-Guilo v. Boland [1958] O.R. 380; Can-

ada Trust Company v. London and Lancashire etc. Co. (1931) 40 O.W.N. 320.

3. It is plaintiff's contention that the validity of the assignment is to be tested by Missouri law since the assignment was allegedly made in Missouri.

(8th Cir. 1969). As stated in *Farrell* v. *Ducharme,* 310 F.Supp. 254 (D.Vt.1970) at page 258:

"The [Supreme Court in Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969)] suggests that actual purpose or motive is the final test and should be subject to close scrutiny when, but only when, the functional nature of the assignment lends itself to the manufacturing of jurisdiction by allowing the legal assignor to retain the major interest in the lawsuit. * * * Theoretically, at least, the test for identifying collusive assignments under *Kramer* appears to be two pronged. First: Is the assignment of a transactional type which places nominal plaintiffs in a position to assert the real interest of another? This standard is objective and functional. Second: Was the use of this type of transaction *actually* motivated by or designed to acquire diversity jurisdiction? Subjective purpose and motive is the inquiry here." [4]

And, where the assignor does not retain a substantial pecuniary interest in and power over the outcome of the litigation and the assignee "has some independent, legitimate interest in the dispute that predates the assignment and is not a complete stranger to the original transaction," the assignment is "real" rather than "colorable," thus foreclosing further inquiry into the motivation of the parties. 3A J. Moore, Federal Practice, ¶ 17.05 [3.–1], pp. 158–159 (1970 ed); Ferrara v. Philadelphia Laboratories, Inc., 272 F.Supp. 1000, 1007 (D.Vt.1967), aff'd per curiam 393 F.2d 934 (2nd Cir. 1968). Thus, in view of the circumstances surrounding the assignment in this case and the corporate relationship between J. F. Pritchard & Company and Pritchard Canadian Limited, whether the assignment herein is "collusive" within the meaning of 28 U.S.C. § 1359 presents a very close question of fact and law.[5] See, for example: C. Wright, Federal Courts, chpt. 4, § 31, pp. 102–103 (1970 ed.), indicating that a corporation cannot create federal jurisdiction by assigning its claim to a subsidiary. See also: Cahokia Sportservice, Inc. v. Cahokia Downs, Inc., 165 F.Supp. 686 (E.D.Ill. 1958).

*Forum Non Conveniens*

■■ Even assuming *arguendo,* however, that the assignment between Pritchard Canadian Limited and its parent corporation is legally sufficient to establish jurisdiction in this Court, it is clearly apparent that, considering all relevant factors, jurisdiction should be declined by this Court under the doctrine of *forum non conveniens.* It is well established that where there exists an alternative forum which will take jurisdiction and in which the balance of convenience lies, the federal courts possess the inherent power to refuse jurisdiction and dismiss the pending action under the doctrine of *forum non conveniens.* Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 645 (2nd Cir. 1950), cert. den. 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76; Yerostathis v. A. Luisi, Ltd., 380 F. 2d 377 (9th Cir. 1967); C. Wright, Federal Courts, § 44, p. 165 (1970 ed.). In *Gulf Oil Corp.* v. *Gilbert* (1947) 330 U.S. 501 at pages 508 and 509, 67 S.Ct. 839 at page 843, 91 L.Ed. 1055, the Supreme Court enumerated the factors

---

4. In *Kramer,* the Supreme Court expressly noted, "[W]e have no occasion to reexamine the cases in which this Court has held that where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter, then the transfer is not 'improperly or collusively made,' regardless of the transferor's motive." 394 U.S. at 828, n. 9, 89 S.Ct. at 1490.

5. To demonstrate the control of the parent corporation over its wholly-owned subsidiary corporation and its effect on and relationship to this litigation, it is noteworthy that plaintiff is able to "commit itself voluntarily to cause its subsidiary, Pritchard Canadian, to enter its appearance in this action whenever a claim is duly filed against it by any party." See: "Plaintiff's Suggestions in Opposition to Defendant's Motion to Quash" filed February 20, 1970.

to be considered in the application of the doctrine of *forum non conveniens* to a particular case:

"An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy.

\* \* \* \* \* \*

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. \* \* \* There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

Although this Court recognizes that a plaintiff's choice of forum should rarely be disturbed, when the above factors are considered in light of the circumstances of this particular case, application of the doctrine of *forum non conveniens* is compelled. See: Alameda Oil Company v. Ideal Basic Industries, Inc., 313 F.Supp. 164 (W.D.Mo.1970).

The Canadian "nexus" of this lawsuit is readily apparent. As previously noted, this action arises out of a contract made between two Canadian corporations for the construction of an anhydrous ammonia plant in Canada. That contract was executed and performed in Canada. Although some of the design work occurred in this district, none of the equipment suppliers are located in this district, none of the construction work was performed in this district, and the majority of the work under the contract was done in Ontario, Canada.

There is presently pending in the Supreme Court of Ontario, Canada, litigation involving similar issues arising out of the performance of that contract. And, it is inevitable that those issues will be presented in this cause should this Court accept jurisdiction. Although plaintiffs state that "distribution of witnesses \* \* \* between the two jurisdictions is roughly equal," it is clear that, once the other parties involved in the occurrences herein, including the major equipment suppliers, the original contracting party, and the individual parties, are joined in this action, as they invariably will be,[6] only a small minority of the total number of witnesses will be found in this judicial district. Since those parties are already engaged in the Canadian litigation,[7] those witnesses will

---

6. Plaintiff presently contends that this is a "simple action on account for unpaid sums allegedly due under the contract" and that "this action is solely between the plaintiff and defendant." This argument, however, ignores the obvious. Should this Court accept jurisdiction in this cause, defendant's claims against plaintiff surely will be raised by counterclaim. Equally evident is the fact that the other parties to the Canadian action, Joy Manufacturing Co., Ingersoll-

Rand Co., R. M. Harris, and Walter Deschner, would be joined as parties to this action. Those corporations and individuals are not citizens of Missouri.

7. The Supreme Court of Canada has already assumed jurisdiction over all involved parties with the exception of the individuals. Those parties are: Dow Chemical of Canada, Pritchard Canadian Limited, J. F. Pritchard & Company, Joy Manufacturing Company, and Ingersoll-

necessarily appear in the Canadian proceedings, regardless of whether this Court assumes jurisdiction in this cause or not.[8] And, any pertinent documentary evidence located in this district also will necessarily be used in the Canadian litigation. The Court has been advised by the defendant that all of its relevant records are located in Canada. Furthermore, the plant itself is located in Canada, thus precluding a jury view in this cause.

With regard to the availability of a remedy by which plaintiff may assert its claims in the Canadian courts, there is little question that those claims may be presented by way of counterclaim in the existing lawsuit, or by the filing of a separate suit to be consolidated with the pending action. The tremendous waste of time, effort and expense, for both the Courts and the parties is also an important factor in determining whether duplicitous litigation should be allowed in both Ontario and Missouri. And, since identical issues will be resolved, regardless of the forum, one of the suits should be dismissed. In light of the Canadian "nexus," this cause is obviously the one which should be avoided.

Finally, since the contract was executed by Canadian corporations and was primarily performed in Canada, and since the contract expressly provides for the application of Canadian law, this Court would be required to consider numerous issues in light of foreign law. And, since defendant is a Canadian corporation which does not do business in this judicial district, any judgment obtained by the plaintiff would require enforcement in Canada, thus requiring the additional involvement of the Canadian courts. Therefore, when the circumstances mentioned above are weighed against the interest of the assignee, J. F. Pritchard & Company, in maintaining suit in this district, the balance of convenience to the courts, both American

and Canadian, and to all other concerned parties rests heavily in Canada. Thus, under the teachings of *Gulf Oil Corporation* v. *Gilbert*, supra, this cause should and will be dismissed without prejudice. See: Noto v. Cia Secula di Armanento, 310 F.Supp. 639 (S.D.N.Y.1970); Vanity Fair Mills v. T. Eaton Co., *supra;* Yerostathis v. A. Luisi, Ltd., supra; Spencer v. Alcoa Steamship Co., 221 F. Supp. 343 (E.D.N.Y.1963), aff'd per curiam 324 F.2d 957 (2nd Cir. 1963).

Accordingly, for the reasons stated above, the above-styled cause is hereby dismissed without prejudice.

It is so ordered.

---

Rand Company. The individual parties are presently contesting jurisdiction.

8. Even though it has no direct bearing on the immediate question, it should be

noted that in this proceeding plaintiff objected to several discovery requests on the grounds that the assignee, Pritchard Canadian Limited, was not a party to this action.