PRECISION CONSTRUCTION CO., and
William R. Montgomery & Associates,
Inc., Appellants,

v.

J.A. SLATTERY CO., INC., d/b/a All-
State Belting Co., Inc., Appellee.

No. 84–2623.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1985.

Decided June 13, 1985.

McMillian, Circuit Judge, filed special-
ly concurring opinion.

John L. Davidson, Clayton, Mo., for ap-
pellants.

M. Jill Wehmer, Clayton, Mo., for appel-
lee.

Before LAY, Chief Judge, McMILLIAN,
Circuit Judge, and WOODS,* District
Judge.

HENRY WOODS, District Judge.

Appellant Precision Construction Co. and
William R. Montgomery & Associates, Inc.
formed a partnership (hereafter Precision)
in June, 1983 with offices in St. Louis
County, Missouri, to bid on construction
work at the Pillsbury company's Sauget,
Illinois plant. The work included installa-
tion of a conveyor belt. After Precision
was given the contract, Pillsbury asked it
to install an additional conveyor belt at the
Pillsbury plant at Cahokia, Illinois. The
two belts were ordered from appellee, J.A.

* The Honorable Henry Woods, United States Dis-
trict Judge for the Eastern District of Arkansas,   sitting by designation.

Slattery Co. d/b/a All-State Belting Co., Inc. (hereafter All-State). Appellee is an Iowa entity which had previously written and solicited orders from Precision. The belts were shipped to Precision in Missouri and transported by it to the Pillsbury plants in Illinois for installation. Subsequent to their installation, both belts failed. All-State had two resident employee-salesmen in Missouri, neither of whom was involved in the above-described transaction. After failure of the belts, one of these employees became involved in an attempt to resolve the ensuing dispute, along with employees who came from Iowa for the same purpose. The Cahokia belt was manufactured by B.F. Goodrich under a warranty. In response to a claim by Precision, Goodrich sent a check covering costs of repairs to All-State, which has declined to forward the funds to Precision. In addition to breach of contract claims, Precision claims a tortious conversion of these monies and also claims that All-State committed a fraud in representing by telephone and mail that the Sauget belt was manufactured by Goodrich when All-State knew otherwise.

Service was attempted on All-State in a Missouri diversity action under the provisions of the Missouri Long-Arm Act, § 506.500 R.S.Mo.1978.[1] The district court quashed service. Precision appeals, claiming that All-State's activities in Missouri meet the test of the first three sections of the Long-Arm Act, namely, transaction of any business, making of any contract, and the commission of a tortious act.[2] We reverse, but in fairness to the District Judge

note that the case which we consider dispositive of the issue, *State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325 (Mo.1984) (en banc), was published after the memorandum and order quashing service was filed and was not considered in the court's memorandum opinion.

■ The problem which arises in this type of case requires a two-step analysis. First, is the defendant's activity within the forum state embraced within the wording of the statute, as interpreted by the state courts? Second, assuming the defendant's activity to be within the statutory language, is it a denial of due process to assert jurisdiction on the basis of such activity? *Mountaire Feeds, Inc. v. Agro-Impex, S.A.*, 677 F.2d 651, 653 (8th Cir.1982); *State ex rel. Metal Service Center v. Gaertner, supra* at 327. The first question is one of state law, and the second is one of federal law. *Iowa Electric Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir.1979), *cert. denied*, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980); *Mountaire Feeds, Inc. v. Agro Impex, S.A., supra.*

## I. THE STATUTORY LANGUAGE

■ It is not necessary for us to decide the troublesome question of where this contract was made or whether defendant committed a tortious act in Missouri, because we hold that the defendant transacted business within the State of Missouri. In *State ex rel. Metal Service Center v. Gaertner, supra*, the Missouri Supreme Court noted

1. § 506.500. **Actions in which outstate service is authorized**

    1. Any person or firm whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

    (1) The transaction of any business within this state;

    (2) The making of any contract within this state;

    (3) The commission of a tortious act within this state;

    (4) The ownership, use, or possession of any real estate situated in this state;

    (5) The contracting to insure any person, property or risk located within this state at the time of contracting.

    2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

2. *See* note 1, *supra.*

that the statutory language was intended "to provide for jurisdiction within the specific categories enumerated in the statutes, to the full extent permitted by the due process clause of the Fourteenth Amendment," citing *State, ex rel. Deere & Co. v. Pinnell,* 454 S.W.2d 889 (Mo.1970) (en banc). *See also State ex rel. Newport v. Wiesman,* 627 S.W.2d 874, 876 (Mo.1982) (en banc).

The Missouri Act was borrowed in large measure from the Illinois Act and the Uniform Interstate and International Procedure Act, generally called the Uniform Long-Arm Act, 9B Uniform Laws Annot. The subsection which we apply here is identical to § 103(a)(1) of the Uniform Act and Ch. 110, § 17(1)(a), Ill.Ann.Stat.1968, from which it was copied. *See State ex rel. Newport v. Weisman, supra.* "We have held that when a state adopts a statute of another state which the courts of the latter state have construed, such construction will be held to have been adopted with the statute." *Id.* at 877. With regard to this section, the Uniform Commissioners' comments are significant. "This provision should be given the same expansive interpretation that was intended by the draftsmen of the Illinois Act and has been given by the courts of that state." An Illinois case is then cited which is closely akin to the facts of the case at bar.[3]

In *Scullin Steel Co. v. National Railway Utilization Corporation,* 676 F.2d 309 (8th Cir.1982), Judge McMillian, a member of this panel, affirmed a holding of the district court that a South Carolina corporation with its principal place of business in Pennsylvania was not "transacting any business" in Missouri. We agree with Judge Blackmar's remarks in *State ex rel. Metal Service Center v. Gaertner, supra,*

distinguishing the latter case. "Here Metal Service supplied the raw materials and shipped them into Missouri for working by Roton. There, so far as the opinion shows, Scullin obtained its raw materials from other sources, produced the 'car sets' as required by the contract, and then shipped them to its customer in another state at the customer's expense." *Id.* at 328. The same distinctions apply in the case at bar. There are others. In *Scullin* the defendant had no office or personnel in Missouri (in sharp contrast to defendant All-State); a Scullin officer went to Pennsylvania to negotiate the contract (here an All-State representative solicited Precision by a communication addressed to the latter in Missouri). All-State attempts to distinguish *State ex rel. Metal Service Center v. Gaertner, supra* on the ground that in the latter case work was performed on the unfinished materials after they were shipped into Missouri. The cases have not drawn such a distinction in their interpretation of the "transacting any business" subsection. One of the leading cases is *Singer v. Walker,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965), a decision of the Court of Appeals of New York. The Illinois defendant shipped a geologist's hammer to a New York retailer who sold it to plaintiff's aunt in New York. On a field trip to Connecticut, the hammer broke and damaged plaintiff's eye. New York's long-arm jurisdiction over the Illinois manufacturer was sustained. "The basic logic forcing an expansive interpretation is that when a company invades a state for pecuniary gain it should be prepared to defend any suit arising out of that invasion."[4]

---

3. *Berlemann v. Superior Distributing Co.,* 17 Ill. App.2d 522, 151 N.E.2d 116 (1958). Defendant, a Colorado corporation, solicited and secured from the Illinois plaintiff orders for two vending machines, which were shipped into Illinois and were allegedly defective. This case points up the comment of Judge Hunter that Section 506.500 "has significantly broadened the former 'doing business' concept of Missouri law." *J.F. Pritchard Co. v. Dow Chemical Co.,* 331 F.Supp.

1215 (W.D.Mo.1971), *aff'd,* 462 F.2d 1998 (8th Cir.1972).

4. Note, *Jurisdiction over Nondomiciliaries—New York Civil Practice Law,* 51 Cornell L.Rev. 377, 385 (1966). *See also Ellis v. Newton Paper Co.,* 44 Misc.2d 134, 253 N.Y.S.2d 47 (Sup.Ct.1964) for a case holding that a defendant had transacted business in the state by shipping goods directly there.

Other than the expansive interpretation given to "transacting any business" in *Gaertner* and *Wiesman, supra,*[5] we are cited to no cases in which the Missouri Supreme Court has interpreted the "transacting any business" subsection in a context similar to that obtaining herein. There is however an expansive interpretation by an intermediate Missouri appellate court sustaining jurisdiction in a similar situation. Where a Texas corporation through a distributor sold plaintiff electronic equipment and advertised the product through literature distributed in Missouri, personal jurisdiction could be obtained under the "transacting business" subsection of the Long-Arm Act. *Simpson v. Dycon Intern, Inc.,* 618 S.W.2d 455 (Mo.App.1981). *See also State ex rel. Farmland Industries, Inc. v. Elliott,* 560 S.W.2d 60 (Mo.App.1977). "The Missouri Courts have liberally construed the statutory requirement of 'transacting business' within the state for the purpose of long-arm jurisdiction." *Scullin Steel v. National Railway Utilization Corp., supra* at 312, *citing Wooldridge v. Beech Aircraft Corp.,* 479 F.Supp. 1041, 1053 (W.D.Mo. 1979); *J.F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.,* 331 F.Supp. 1215, 1218 (W.D.Mo.1971), *aff'd,* 462 F.2d 998 (8th Cir.1972); *American Hoechst Corp. v. Bandy Laboratories, Inc.,* 332 F.Supp. 241 (W.D.Mo.1970).

## II. THE DUE PROCESS ISSUE

■ The present due process requirement for asserting jurisdiction over nonresident defendants has evolved from a requirement of presence,[6] consent,[7] doing business,[8] and domicile.[9] The modern rule was stated by Chief Justice Stone in *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) as requiring only "that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." *Id.* at 316, 66 S.Ct. at 158.

While the activities of the defendant in *International Shoe* were rather substantial,[10] such cannot be said of *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) in which the contacts with the forum were indeed minimal. The insured made an insurance contract with an Arizona company whose assets were later absorbed by a Texas company. A reinsurance certificate was mailed to the insured, who was then residing in California, and he continued the policy in force. He was the company's only California policyholder. After the insured's death, his beneficiary obtained a default judgment in California under a statute permitting substituted service under these circumstances. The Supreme Court of the United States held that the judgment was entitled to full faith and credit in Texas.

Some limitations were soon placed upon such a broad jurisdictional reach. In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) this limitation consisted of a requirement "that it is essential in each case that there be some act by which the defendant purposefully avails it-

5. In *State ex rel. Newport v. Wiesman,* 627 S.W.2d 874 (Mo.1982) (en banc) the court assumed jurisdiction over a personal injury arising out of a Georgia plane crash. Plaintiff sued the manufacturer, a Delaware corporation with its principal place of business in Kansas. The court held that the establishment in Missouri of two franchise dealers for the purpose of sales and service of aircraft constituted "transaction of any business within the State" within the meaning of § 506.500(1) R.S.Mo.

6. *Pennoyer v. Neff,* 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1877).

7. *St. Clair v. Cox,* 106 U.S. (16 Otto) 350, 1 S.Ct. 354, 27 L.Ed. 222 (1882); *Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927).

8. *International Harvester v. Kentucky,* 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479 (1914).

9. *Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

10. International Shoe employed salesmen in Washington to solicit orders there. They were full-time employees and residents of the state, drawing substantial commissions from business carried on for their employer.

self of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Id.* at 253, 78 S.Ct. at 1239. The court held that Florida could not assert personal jurisdiction over a Delaware trustee as a consequence of the probate of settlor's will in Florida, where she had moved from Pennsylvania, when the Delaware trustee's only contacts with Florida were some routine dealings by mail with the settlor.

With regard to the due process issue, this court has in the past recognized that due process would be more easily established over a nonresident seller shipping goods into the forum state as contrasted with a nonresident buyer. As Judge Heaney observed in *Electro-Craft Corp. v. Maxwell Electronics Corp.*, 417 F.2d 365, 368 (8th Cir.1969), "a nonresident seller subjects itself to the obligation of amenability to suit in return for the right to compete for sales." When a nonresident seller ships goods into Missouri, it is somewhat easier to find "an act by which the defendant purposefully avails itself of the privilege of conducting activities." *Hanson v. Denckla, supra.* Admittedly the buyer-seller distinction is not the ultimate test of this requirement[11] but has been considered significant. *See McQuay, Inc. v. Samuel Schlosberg, Inc.*, 321 F.Supp. 902, 907–08 (D.Minn.1971).[12]

In the case at bar it is not necessary to decide whether the contract was made in Missouri so as to fall within § 506.500(1)(2) Mo.R.S. Without question the contract was to be performed and was performed in Missouri. As Judge Blackmar noted in *State ex rel. Metal Service Center v. Gaertner, supra:* "The bare making of a contract is a constitutionally sufficient incident.... The place for total performance is, if anything, more significant than the place of contracting." *Id.* at 328. This court has underlined the significance of the place of performance in *Gardner Engi-*

neering Corp. v. Page Engineering Co.*, 484 F.2d 27 (8th Cir.1973). In that case the contract was made outside the forum state. It was to be performed but had not yet been performed in the forum state. The only other connection with the latter was that a defendant had sent a bid notice to the office of plaintiff in the forum state. These contacts were held to be constitutionally sufficient. "The question here is whether the promise of performance of this customized contract obligation within the forum state provided a substantial connection with that state. We think it did." *Id.* at 31. The court quoted *McGee v. International Life Ins. Co., supra* at 222 as follows: "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [the forum] state." 484 F.2d at 31.

For twenty years the "minimum contacts" requirement in this circuit has been tested against the five factors delineated in the landmark opinion of Justice Blackmun in *Aftanase v. Economy Baler Company*, 343 F.2d 187 (8th Cir.1965), delivered while he was a member of this court. "We observe, however, that at one time or another in the opinions [of the Supreme Court] three primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the course and connection of the cause of action with those contacts, are stressed, and that two others, interest of the forum state and convenience, receive mention." *Id.* at 197. The primary factors are all satisfied by the activity of the defendant in the State of Missouri. While the secondary factors are not of particular significance, it can certainly be argued that Missouri has an interest in the shipment of defective goods to a location within its border. It is as convenient for the parties to try this case in Missouri as in Iowa.

In support of its argument that due process was not satisfied, plaintiff-appellee cites the following cases: *Land-O-Nod Co.*

---

**11.** *See Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir.1977).

**12.** In this case the court found that sending a purchase order to a Minnesota corporation for goods to be shipped from and paid for in Min-

nesota did not constitute sufficient "minimum contacts." The court recognized that a different situation obtains when a defendant "goes into another state to transact business or sell his wares." *Id.* at 908.

*v. Bassett Furniture Industries,* 708 F.2d 1338 (8th Cir.1983); *Toro Co. v. Ballas Liquidating Co.,* 572 F.2d 1267 (8th Cir. 1978); and *Mountaire Feeds, Inc. v. Agro-Impex, S.A., supra.* The principal basis for denial of jurisdiction in *Land-O-Nod Nod v. Bassett Furniture Industries, supra,* a trademark infringement case, was that none of the allegedly infringing mattresses were sold in Minnesota. "As in *Toro,* in the instant case, it is the absence of any connection between Land-O-Nod's cause of action and the sales activity of Bassett and Malone in Minnesota which forces us to conclude that personal jurisdiction is lacking." *Id.* at 1341. As noted in the above excerpt, *Toro Co. v. Ballas Liquidating Co., supra,* shared the same deficiency. The court was unwilling to assume jurisdiction where the corporation's forum activities "were unrelated to the cause of action." 572 F.2d at 1270. In this situation defendant would have "no reason to expect to be haled before the [forum state's] court[s]," quoting from *Shaffer v. Heitner,* 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977). 572 F.2d at 1271.

The factor on which these two cases turned is not only a primary consideration of the due process issue; it is required by Section 2 of the Missouri Long-Arm statute.[13] The missing factor in those cases is present here. The cause of action arises from the very transactions on which jurisdiction is based—the shipment of goods into Missouri in performance of a contract of sale.

*Mountaire Feeds, Inc. v. Agro-Impex, S.A., supra,* involved "a nonresident *buyer,* not a nonresident *seller." Id.* at 654. There are other differences. In *Mountaire,* defendant had no agents or employees in Arkansas, and at no time did any employee visit Arkansas. All contact between the parties was by mail or telephone. *Id.* at 654. Not only did defendant here have two full-time employees stationed in Missouri, but employees came from Iowa into Missouri to attempt to settle the con-

troversy arising from the defective conveyor belts. Defendant-appellee's contacts here satisfied the requirements of due process.

The order quashing service is reversed, and the district court is directed to exercise jurisdiction over this litigation.

McMILLIAN, Circuit Judge, concurring specially.

I concur specially in the opinion in this case. I agree with the majority opinion that the Missouri Supreme Court's decision in *Metal Service of Georgia, Inc. v. Gaertner,* 677 S.W.2d 325 (Mo.1984) (en banc) is dispositive of the "transacting business" issue in this case. Although I believe that *Metal Service* wrongly held that the defendant was transacting business, I nonetheless must accept the state court's determination of this issue.

**13.** Section 506.500(2) R.S.Mo. reads: "Only causes of action arising from acts enumerated in this section may be asserted against a defend-

ant in an action in which jurisdiction over him is based upon this section."