**WATLOW ELECTRIC MANUFACTURING CO., Appellant,**

v.

**PATCH RUBBER CO., Appellee.**

No. 87–2045.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1987.

Decided Feb. 11, 1988.

Robert J. Brummond, St. Louis, Mo., for appellant.

Harry W. Wellford, Jr., St. Louis, Mo., for appellee.

Before ARNOLD and JOHN R. GIBSON, Circuit Judges, HENLEY, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Watlow Electric Manufacturing Company, a Missouri corporation, appeals from the district court's dismissal of its suit against Patch Rubber Company, a North Carolina corporation, for lack of personal jurisdiction. Watlow argues that Patch, in the process of buying silicone rubber heaters from Watlow, performed acts sufficient to warrant service of process on it under the Missouri long-arm statute, Mo.Rev. Stat. § 506.500 (1986), and exercise of personal jurisdiction over it by the district court for the Eastern District of Missouri. The district court ruled on the basis of affidavits, which we must view in the light most favorable to the plaintiff, and we reverse and remand.

Watlow sued Patch in the district court for the Eastern District of Missouri, claiming that Patch owed Watlow money on a contract for purchase of silicone rubber heaters or, in the alternative, on an open account. Patch has its place of business in North Carolina. Service of process was made under the Missouri long-arm statute, § 506.500. Patch responded with a Fed.R. Civ.P. 12(b)(2) and 12(b)(5) motion to dismiss for lack of personal jurisdiction and to quash service of process. Both parties presented affidavits on the motion. The district court concluded that Patch did not "transact any business" in Missouri so as to become amenable to service under the long-arm statute, and therefore the court dismissed the complaint.

▮ In reviewing the district court's determination regarding personal jurdisdiction based on written submissions, as in this case, we must view the facts in the light most favorable to Watlow, *Aaron Ferer & Sons v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir.1977); *Scullin Steel Co. v. National Railway Utilization Corp.*, 676 F.2d 309, 311 (8th Cir.1982); 2A J. Moore and J. Lucas, Moore's Federal Practice § 12.07[2.–2] (1987); but the burden is on Watlow to make a prima facie showing of jurisdiction, *Aaron Ferer & Sons*, 564 F.2d at 1215. At trial, the district court must resolve the factual disputes and arrive at an ultimate conclusion as to jurisdiction. *See generally Cutco Industries, Inc. v. Naughton*, 806 F.2d 361, 364–65 (2d Cir.1986). The burden of proof is then on plaintiff to establish jurisdiction by a preponderance of the evidence. *Marine Midland Bank v. Miller*, 664 F.2d 899, 904 (2d Cir.1981); Moore's Federal Practice, *supra*.

The facts, taken in the light most favorable to Watlow, are that a Patch representative contacted Watlow in St. Louis by filling out and sending a form postcard preprinted by Watlow requesting a catalog of Watlow products. After receiving the postcard, a Watlow representative contacted Patch in North Carolina about buying silicone rubber heaters from Watlow. Patch sent some of its own heaters to Watlow in Missouri for examination and design changes of the heaters. Negotiations in North Carolina culminated in Patch ordering heaters from Watlow. Patch then sent materials to Watlow in Missouri on at least eight occasions to have Watlow incorporate those materials into the heaters Watlow manufactured for Patch. After Patch had begun ordering heaters from Watlow, Bob Coniam, a Patch manager, "visited Watlow's plant in St. Louis for approximately 6 hours and met with several of Watlow's management personnel and engineers regarding the manufacture of heaters by Watlow for [Patch]. Additionally, Mr. Coniam toured the Watlow plant in St. Louis relating to the manufacture of heaters." Patch also telephoned and "sent" (presumably by mail) orders to Watlow in Missouri.[1]

---

1. The affidavits were in strong conflict on many of these issues. For instance, the importance of Coniam's visit to St. Louis was disputed vigorously. The affidavit of Samuel Curto, Patch's General Manager, described Coniam's visit as a brief one while "on a business trip to Missouri for other purposes." Coniam stated that he was invited by Watlow's North Carolina representa-

tive to tour Watlow's research facility in St. Louis. He visited the plant and received a tour, but by the time of his visit all work on the sample heat pads (which were the model Watlow submitted to Patch) had been completed. Coniam states that the discussions with Watlow personnel during his visit were "theoretical in nature, regarding other pads not yet devised."

The question of whether personal jurisdiction over Patch is proper consists of two parts: first, did Patch "transact any business" in Missouri, so as to authorize service of process under the Missouri long-arm statute; and second, did Patch have "minimum contacts" with Missouri, so that exercise of jurisdiction by a court in Missouri would be fair and therefore in accord with due process? *See Precision Construction Co. v. J.A. Slattery Co.*, 765 F.2d 114, 115, 117 (8th Cir.1985).

■ First, we conclude that Patch's activities satisfy the "transaction of business" test under Missouri law. The relevant part of the Missouri long-arm statute provides:

> 1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
>
> > (1) The transaction of any business within this state.

Mo.Rev.Stat. § 506.500. In enacting the Missouri long-arm statute, the legislature intended to extend Missouri courts' jurisdiction within the categories listed in the statute to the full extent permitted by the due process clause. *State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo.1984) (en banc).

The facts as presented by Watlow establish that Patch satisfied the "transaction of any business" test as interpreted by Missouri courts. The pivotal facts Watlow's affidavits assert are that Patch sent a representative to Missouri, who engaged in an extended meeting relating to the contract or account in issue; that Patch sent materials to Missouri for Watlow to incorporate

in the heaters it made for Patch; and that Patch directed numerous telephone and mail communications relating to the contract or account to Watlow in Missouri, including orders.

In *Watlow Electric Manufacturing Co. v. Sam Dick Industries, Inc.*, 734 S.W.2d 295 (Mo.Ct.App.1987), a combination of interstate telephone and mail communications and a single visit to finalize design of vaporizers constituted "transaction of any business," permitting Watlow to sue Sam Dick in Missouri on a contract for sale of the vaporizers. The court specifically remarked that a post-contract meeting, as opposed to a meeting to negotiate contracts, was sufficient to meet the "transacting business" requirement. *Id.* at 298. Patch attempts to distinguish the facts in *Sam Dick* by arguing that the visit in that case was said to be essential to the completion of the contract, whereas Coniam's visit to Watlow was a mere "pleasantry." Although the Watlow affidavit is somewhat vague about the purpose of Coniam's visit, it does state that he "met with several of Watlow's management personnel and engineers regarding the manufacture of heaters by Watlow for [Patch]," and that the visit lasted for six hours. Seen in the light most favorable to Watlow, the facts imply more than a courtesy call and approximate the sort of contact involved in *Sam Dick*. *See also State ex rel. Farmland Industries, Inc. v. Elliott*, 560 S.W.2d 60, 63 (Mo.Ct.App.1977) (dictum) (any one of eight negotiation meetings in Missouri would have constituted "transaction of any business").

Any doubt about the transaction of business test is dispelled by the fact that Patch sent materials to Missouri to be incorporated in the heaters Watlow manufactured.[2] The Missouri Supreme Court has held that similar facts meet the "transaction of business" requirement. *State ex rel. Metal Service Center of Georgia, Inc. v. Gaert-*

On the other hand, Watlow's affidavits presented Coniam's visit as a lengthy (6 hour) and substantive one.

At trial the district court must evaluate this evidence, make findings of facts, and draw the

resulting inferences in determining the relative strengths of the parties' positions.

**2.** The materials Patch sent to Missouri included wire, tubing, cords, and preforms.

*ner*, 677 S.W.2d 325 (Mo.1984) (en banc). In *Gaertner*, a Georgia corporation solicited a Missouri corporation to perform work on the Georgia corporation's products. After the parties entered a contract, the Georgia corporation shipped its product to Missouri for the work to be performed, then shipped the product back to Georgia. The Missouri Supreme Court emphasized the importance of the foreign corporation shipping its products to Missouri for the work to be done there; it considered this factor to distinguish *Gaertner* from *Scullin Steel Co. v. National Railway Utilization Corp.* 676 F.2d 309 (8th Cir.1982), in which "so far as the opinion shows, Scullin [the plaintiff] obtained its raw materials from other sources, produced the 'car sets' as required by the contract, and then shipped them to its customer in another state at the customer's expense," *Gaertner*, 677 S.W.2d at 328, and in which jurisdiction did not lie. *See also Precision Construction Co.*, 765 F.2d at 118 (agreeing with *Gaertner* that defendant's shipment of materials to Missouri to be worked on distinguishes facts in *Scullin Steel*). Patch's shipment of materials to Missouri to be incorporated in the heaters brings this case within *Gaertner*.

Both Patch and the district court emphasize that Watlow initiated the relationship between it and Patch.[3] While this weighs in favor of Patch's position, the combination of shipping material to Missouri for Watlow to incorporate in the heaters and the visit by Patch's representative convince us that under Missouri law, Patch transacted business in Missouri and is therefore amenable to service under the Missouri long-arm statute.

■ Second, we conclude that exercise of jurisdiction by a court sitting in Missouri is consistent with Patch's due process rights. The test, of course, is whether Patch "purposefully established 'minimum contacts' in the forum State," such that "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burg-*

*er King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 476, 105 S.Ct. 2174, 2183, 2184, 85 L.Ed.2d 528, 542, 543 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 320, 66 S.Ct. 154, 158, 160, 90 L.Ed. 95 (1945)). "When the nonresident deliberately establishes 'continuing relationships and obligations with citizens of another state' ... and the litigation results from alleged injuries that 'arise out of or relate to those activities,' the [Supreme] Court has reasoned that it would not be unfair to compel a nonresident to assume the burdens of litigation in the forum state. Specifically, among contacts held sufficient in various combinations to justify the forum state's assertion of jurisdiction over a nonresident, are the nonresident's telephone calls into the forum state, physical presence for business purposes in the forum state, or receipt of substantial profits from commerce with its residents." *Dudley v. Dittmer*, 795 F.2d 669, 672 (8th Cir. 1986) (citations omitted). As discussed in the long-arm analysis, a nonresident's shipment of goods to the forum state to be worked on there was also said to be significant in *Precision Construction Co.*, 765 F.2d at 116, 118.

In this case, the combination of interstate communications extending into Missouri, physical presence in Missouri, and shipment of goods to Missouri for performance of what Patch presumably hoped to be a profitable contract all relate to the contract which gave rise to the litigation and all underscore Patch's willingness to undertake continuing obligations to a Missouri corporation. *Cf. Burger King*, 471 U.S. at 480, 105 S.Ct. at 2186, 85 L.Ed.2d at 545–46 (defendant's "voluntary acceptance of the long-term and exacting regulation of his business" by company with forum state headquarters and foreseeability of injury in forum state from breach of contract made jurisdiction in forum state presumptively reasonable). Taking the facts in the light most favorable to Watlow, Patch's relationship with Missouri was deliberate, not "ran-

---

**3.** Watlow's argument that Patch solicited it is based upon a form postcard that Patch mailed to Watlow. The postcard was only a request for information which, if received, would simply have allowed Patch to decide if it was interested in further contact, rather than a request to do business with Watlow. The postcard does not lead to the conclusion that Patch initiated the relationship with Watlow.

dom," "fortuitous" or "attenuated," *id.* at 480, 105 S.Ct. at 2186, 85 L.Ed.2d at 545–46 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)) and therefore appears at this stage in the litigation to constitute "minimum contacts" with the forum.

Patch has presented no compelling reasons why exercise of jurisdiction over it would be unfair, *see Burger King,* 471 U.S. at 475–78, 105 S.Ct. at 2184–85, 85 L.Ed.2d at 543–44, and therefore it would not offend due process to require Patch to litigate liability on its contract in Missouri.

The judgment of the district court is reversed and this case is remanded for further proceedings. The district court must decide the factual issues with respect to jurisdiction and if it concludes that jurisdiction lies, may proceed to consider the merits.