BOWMAN, Circuit Judge.
Plaintiff in this case, Tom Papachristou, a resident of Arkansas, was in Texas when he agreed during a telephone conversation with defendant’s president, Jim Mills, who was then in Florida, to buy part of an aircraft engine from defendant Turbines Inc., an Indiana-based corporation. Turbines, at the time of this conversation, was in the process of bidding by phone on two aircraft engines, and had learned that Pa-pachristou also was bidding on one of the engines. The engines were in Texas. Turbines purchased them and sent one of its employees to Texas to pick them up and drive them back to Indiana. The only issue in this appeal is whether the District Court[1] correctly held that Turbines’s attempted delivery of a portion of the engine to Papachristou in Arkansas, the company’s only relevant contact with the forum state, was not a sufficient contact to support the court’s exercise of in •personam jurisdiction over Turbines. We affirm.
I.
The basic facts related to the jurisdictional issue, as recited by the District Court in its order granting Turbines’s motion to dismiss the action for lack of personal jurisdiction, are not in dispute.
Mr. Jim Mills, president of defendant, an Indiana corporation, called Mr. Bud Craft, in Mr. Craft’s Texas office, to bid on certain airplane engines for sale by Associated Aviation Underwriters. Plaintiff was in Mr. Craft’s office at the time of Mills’ call. Mills asked to speak with plaintiff. Plaintiff and Mills then reached an oral agreement for the joint purchase of one of the engines; the terms of that agreement form the basis of the case at bar. Mills then sent one of defendant’s employees to Texas to pick up the engines, and to drive the engines back to Indiana. As the route from Texas to Indiana took defendant’s employee within two or three miles of plaintiff’s place of business in Marion, Arkansas, Mills instructed the employee to drop the front end of one of the engines (the portion for which Mills contended plaintiff had contracted) off with plaintiff. When defendant’s employee attempted to do so, the dispute over which portion of the engine had been purchased by plaintiff arose. Defendant’s employee returned to his truck and completed the drive to Indiana without depositing any portion of the engine with plaintiff.
Papachristou v. Turbines Inc., No. J-C-88-131 at 1-2 (E.D.Ark. Aug. 18, 1988).
Papachristou filed his action in an Arkansas state court, alleging breach of an oral *1118 contract. Turbines removed the action to the Federal District Court and moved to dismiss the complaint for lack of personal jurisdiction. The District Court found that Turbines’s only contact with Arkansas related to the action was the attempted delivery, “and this merely because plaintiffs place of business was directly along the route defendant’s employee would drive from Texas to Indiana.” Id. at 3.[2] The court concluded that this single contact was not a substantial connection to Arkansas, nor did it show that Turbines had availed itself, purposefully or otherwise, of the laws of the State of Arkansas. Id. Papachristou appeals.
II.
This jurisdictional inquiry involves two parts: (1) whether the facts satisfy the requirements of the state’s long-arm statute; and (2) whether the exercise of jurisdiction would be consistent with due process. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir.1982). The Arkansas long-arm statute extends the jurisdiction of that state’s courts to the limits permitted by the Constitution. Id.; see Ark.Code Ann. § 16-4-101 (1987). Accordingly, our opinion focuses, as did the parties and the District Court, on the question of whether an Arkansas court could have exercised jurisdiction on the facts of this case consistent with the due process clause of the fourteenth amendment.
The due process clause prohibits states from rendering binding judgments against individuals who have no meaningful contacts with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154,159, 90 L.Ed. 95 (1945). Thus, a nonresident defendant must have sufficient contacts with the forum state so that litigation there would not “offend ‘traditional notions of fair play and substantial justice.’ ” Id. at 316, 66 S.Ct. at 158 (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). A defendant’s connections with the forum must be such that he or she “should reasonably anticipate being haled into court there.” World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This requirement results in “fair warning” to potential defendants, who may accordingly choose to “ ‘structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit.’ ” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985) (quoting World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567). In the absence of a dispute over the underlying facts, a district court’s decision that the due process clause prohibits the exercise of personal jurisdiction over a nonresident defendant is a question of law, subject to de novo review. Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1477 (9th Cir.1986).
A.
As a threshold matter in cases of this sort, a court must determine whether a nonresident defendant has “purposefully avail[ed] itself of the privilege of conducting activities within the forum State.”[3] Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). In the instant case, the District Court concluded that Turbines did not avail itself — purposefully or otherwise — of the privilege of conducting activities in Arkansas. We agree. Turbines’s presence in the state was an incidental consequence of traveling *1119 an interstate highway from Texas to Indiana. The attempt to drop off a portion of the engine at Papachristou’s place of business in Arkansas was essentially nothing more than a courtesy to Papachristou, and was feasible only because, as observed by the District Court, Papachristou’s place of business was directly along the route Turbines’s employee would drive in transporting the engines from Texas to Indiana. In these circumstances, we believe the District Court was correct in ruling that this sole contact with Arkansas was insufficient to show Turbines had purposefully availed itself of the privilege of conducting activities within Arkansas.
B.
Even assuming arguendo that Turbines’s sole contact with Arkansas could be said to amount to purposeful activity there, due process would not be satisfied unless this contact were viewed as creating a “substantial connection” to the forum. Burger King, 471 U.S. at 475, 105 S.Ct. at 2183. “[M]inimum requirements inherent in the concept of ‘fair play and substantial justice’ may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities.” Id. at 477-78, 105 S.Ct. at 2185 (quoting World-Wide Volkswagen, 444 U.S. at 292, 100 S.Ct. at 564). Consequently, a state may not exercise jurisdiction over a defendant whose single act or occasional acts result in only “attenuated” affiliations with the forum. Id. 471 U.S. at 475 n. 18, 105 S.Ct. at 2184 n. 18. Although “even a single [purposeful] act can support jurisdiction,” a court is not required to consider such an act a sufficient ground for the exercise of jurisdiction, in light of the nature, quality, and circumstances of the act. Id.[4]
Relying on Gardner Eng’g Corp. v. Page Eng’g Co., 484 F.2d 27 (8th Cir.1973), Papa-christou argues that the oral contract, or at least his version of that contract, provides a substantial connection to the state because it was to be performed by delivery in Arkansas, with Turbines bearing the risk of loss en route. Brief for Appellant at 9-10. In Gardner Engineering this court held that the place of performance of a contract for delivery of specially designed machinery was “a contact of such quality as to support jurisdiction.” Id. at 32. This was so even though the agreement was breached and defendant never came into the state. However, Gardner Engineering is distinguishable because there were significantly more contacts with the forum state in that case than in the present case. The additional contacts in Gardner Engineering included negotiations in the forum state between the contracting parties and an agreement (never fulfilled) by the defendant to supervise the installation and start-up of the machinery in the forum state. Id. Mid-America, Inc. v. Shamaiengar, 714 F.2d 61 (8th Cir.1983), is similarly distinguishable; there we upheld jurisdiction over nonresident defendants based on their unkept promise to engage in what we described as “substantial economic activity” by supervising the construction of a plant in the forum state. Id. at 61-62.
While the plaee-of-performance analysis offers the advantage of easy application, to regard performance in the forum state, however minimal or incidental that performance may be, as ipso facto establishing in personam jurisdiction is at odds with the Supreme Court’s more recent admonition against “conceptualistic ... theories of place of contracting or of performance.” Burger King, 471 U.S. at 478-79, 105 S.Ct. at 2185 (quoting Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316, 63 S.Ct. 602, 604, 87 L.Ed. 777 (1943)). Moreover, nearly a decade after Gardner Engineering, this court observed that “the provision for delivery within the forum [is a] secondary or ancillary factor[] and cannot *1120 alone provide the ‘minimum contacts’ required by due process.” Scullin Steel Co. v. National Ry. Utilization Corp., 676 F.2d 309, 314 (8th Cir.1982) (no jurisdiction in Missouri although the plaintiff/seller had agreed to supply the goods “F.O.B. St. Louis,” so that the risk of loss changed hands in that city). Cf. Precision Constr. Co. v. J.A. Slattery Co., 765 F.2d 114, 118 (8th Cir.1985) (jurisdiction upheld; due process satisfied where actual shipment of goods into forum state was coupled with additional contacts, including defendant’s sending employees into the forum state to try to resolve dispute with plaintiff and defendant’s keeping two resident employee-salesmen there). We hold that, even assuming Turbines has engaged in purposeful activity in Arkansas, Turbines’s highly attenuated affiliation with Arkansas, consisting only of an attempted delivery of a portion of an engine to Papachristou while Turbines’s driver was en route from Texas to Indiana, does not establish the meaningful connection with the forum state that due process requires.
III.
In summary, we hold that the District Court correctly ruled that Turbines has not purposefully availed itself of the privilege of conducting activities within the forum state. We further hold that Turbines’s attenuated contact with Arkansas does not provide the minimum contacts with the forum state required by the due process clause. Accordingly, the judgment of the District Court dismissing this case for lack of personal jurisdiction is affirmed.

. The Honorable Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

. Engines sold by Turbines are used over a large part of the United States, including Arkansas. In fact Papachristou has one of them on an aircraft he owns, although in dealing with Papa-christou no Turbines agent ever entered Arkansas apart from the employee who made the aborted drop-off at Papachristou’s place of business in the present case. See Affidavit of Turbines President Jim Mills, appended to Appellant's Brief. Papachristou does not contend that Turbines has any presence in Arkansas other than as shown by its dealings with him in the transaction from which this lawsuit arises.

. Justice Stevens, concurring in Asahi Metal Indus. v. Superior Court, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), has suggested that this initial inquiry is unnecessary if it is evident that a state’s exercise of jurisdiction would be unreasonable even if purposeful activity were shown. Id. at 121-22, 107 S.Ct. at 1038.

. This court has long adhered to Justice (then Judge) Blackmun’s formulation of factors to be weighed in determining whether contacts are sufficient for the exercise of jurisdiction. See Aftanase v. Economy Baler Co., 343 F.2d 187, 197 (8th Cir.1965) (primary factors are quantity of contacts; their nature and quality, and their connection with the cause of action; the interest of the forum state and convenience may also be examined); see also Precision Constr. Co. v. J.A. Slattery Co., 765 F.2d 114, 118 (8th Cir.1985) (citing Aftanase factors).