**TEXAS SOURCE GROUP, INC.,**
**Legislative Source Group, Inc.,**
**and TSG/JV, Plaintiffs,**

v.

**CCH, INC. and Institute for Public**
**Affairs, Inc., Defendants.**

**Civil Action No. H–96–2222.**

United States District Court,
S.D. Texas,
Houston Division.

April 30, 1997.

Lester L. Hewitt, Pravel, Hewitt, Kimball & Krieger, Houston, TX, for Plaintiffs.

Phillip J. John, Jr., Baker & Botts, Houston, TX, for Defendants.

## MEMORANDUM OPINION GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE

HOYT, District Judge.

## I. INTRODUCTION

The plaintiffs, Texas Source Group, Inc. ("TSG"), Legislative Source Group, Inc., and TSG/JV, bring this action against the defendants, CCH, Inc. ("CCH") and the Institute for Public Affairs, Inc. ("IPA"), alleging misappropriation of trade secrets and confidential information, breach of the parties' nondisclosure agreement, negligent misrepresentation, and actual fraud.

Pending before the Court is the defendants' motion to dismiss this action for improper venue on the basis of a contractual forum-selection clause, pursuant to Federal Rule of Civil Procedure 12(b)(3). Alternatively, the defendants move to transfer this action to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §§ 1404(a), 1406(a). Having reviewed the motion, response, and the applicable law, this Court is of the opinion that the defendants' motion to transfer shall be granted and their motion to dismiss shall be denied.[1]

## II. FACTUAL BACKGROUND

In 1994, Gavin Clarkson and a group of investors incorporated NationBase, Inc. ("NationBase") in Delaware, for the purpose of developing a database that would provide potential users instant access to proposed state and federal legislation. In furtherance of this business plan, NationBase designed a database capable of managing only a limited amount of information.

Because Clarkson and NationBase desired a more sophisticated, powerful database, they engaged TSG to design and develop a computer software system that would enable end users to efficiently and comprehensively research and access vast amounts of legislative information. According to its complaint, "TSG committed enormous time and resources to developing the necessary computer system and software, utilizing a highly sophisticated program known as Lotus Notes with which TSG has certified expertise."

In April of 1994, CCH, a publisher of tax and business law materials, and NationBase

---

1. The defendants' have also moved: to dismiss this suit pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b); for a more definite statement under Federal Rule of Civil Procedure 12(e); for a protective order; and for leave to file a second-amended complaint. Because the Court is granting the defendants' motion to transfer, it shall refrain from ruling on the foregoing motions. "Judicial integrity dictates that the court to whom the case is transferred should have the opportunity to deal with the case in its entirety, not pieces of the case carved off by another court." *Watkins & Son Pet Supplies v. Iams Co.*, No. CIV.A.94–70379, 1995 WL 871235 (E.D.Mich. Apr. 5, 1995); *see also Burger King Corp. v. Stroehmann Bakeries, Inc.*, 929 F.Supp. 892, 893 (E.D.Penn.1996) (court declined to rule on pending motions because the suit was transferred to another forum).

initiated discussions concerning CCH's interest in becoming an investor in and or customer of NationBase. Pursuant to a nondisclosure agreement executed between NationBase and CCH, NationBase provided CCH confidential information concerning TSG's database design. CCH nevertheless sought further information and requested additional disclosure from TSG regarding its software developments. Before exchanging any confidential information, however, CCH and TSG executed a nondisclosure agreement ("Agreement") in August of 1994.

The Agreement, a two-page, single-spaced document, printed in standard-sized type and with no fine print, contains a forum-selection clause providing that "[s]uit under [the] Agreement shall only be brought in a court of competent jurisdiction in the state of Illinois." Pursuant to the Agreement, TSG "made substantial disclosures [of confidential information] to CCH [regarding] its software developments, both verbally and in the form of a notebook. . . ."

CCH ultimately chose not to invest in NationBase, opting instead to develop a legislative reporting system with State Net, a subsidiary company of the IPA. On July 5, 1996, the plaintiffs filed this suit against the defendants, alleging: 1) misappropriation of trade secrets and confidential information; 2) breach of the nondisclosure agreement and confidential relationship; 3) negligent misrepresentation; and 4) actual fraud.

## III. THE PARTIES' CONTENTIONS

The defendants move to dismiss this suit or, alternatively, to transfer it to the Northern District of Illinois, arguing that the Agreement's forum-selection clause renders venue in the Southern District of Texas improper.

To the contrary, the plaintiffs contend that venue is proper, asserting that the forum-selection clause at issue is invalid and unenforceable because: 1) CCH materially breached the Agreement and, thus, is not entitled to invoke the forum-selection provision; 2) the claims asserted by the plaintiffs do not directly implicate the Agreement and its forum-selection clause; and 3) the Agreement has expired. The plaintiffs, neverthe-

less, urge this Court to transfer, rather than dismiss, the suit if it finds that the forum-selection clause at issue is enforceable.

## IV. STANDARD OF REVIEW

It is well established that forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown to be 'unreasonable' under the circumstances." *International Software Systems, Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (1996) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972)). Therefore, courts generally enforce forum-selection clauses unless the nonmoving party clearly shows that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916. However, the moving party bears a "heavy burden of proof" in establishing the invalidity of the forum-selection clause. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991).

In the instant case, the plaintiffs have not alleged or offered any evidence showing that the forum-selection clause is invalid based on fraud or overreaching. Rather, the evidence before the Court clearly shows that the choice-of-forum clause was the product of an arm's length business discussion, endorsed by representatives of both TSG and CCH. Nonetheless, the plaintiffs advance several arguments which they contend render the forum-selection clause unenforceable. The Court shall consider the plaintiffs' arguments in greater detail below.

## V. ANALYSIS AND DISCUSSION

### A. Is the Forum–Selection Clause Valid and Enforceable?

The plaintiffs contend that the principles of contract and equity bar the Court's enforcement of the forum-selection clause because the defendants have breached the Agreement. That is, the plaintiffs maintain that the defendants should not benefit from the forum-selection provision if they have contravened the terms of the Agreement. The Court rejects this argument because the

very purpose of the forum-selection clause belies their argument.

A forum-selection clause is a "manifestation of the parties' preferences as to a convenient forum" in which to litigate any disputes that may arise under the contract. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir.1995). Contractual parties incorporate these provisions into their agreements because they tacitly recognize that either or both parties may subsequently breach or dispute the contractual terms. Therefore, it is altogether inconsistent for the plaintiffs to now argue that the forum-selection clause is unenforceable based on an alleged breach of the Agreement.

Were the Court to rule otherwise, a party could defeat a validly negotiated forum-selection clause by simply alleging that the nonmoving party breached the contract, rendering the clause wholly superfluous. Moreover, the narrow interpretation suggested by the plaintiffs runs counter to the law favoring forum-selection clauses. *See Stewart Org., Inc. v. Ricoh, Corp.*, 487 U.S. 22, 32, 108 S.Ct. 2239, 2245, 101 L.Ed.2d 22 (1988) (Kennedy, J., concurring) (valid forum-selection clauses must receive controlling consideration "in all but the most exceptional cases"). The Court disagrees with the plaintiffs' reasoning and, accordingly, rejects the plaintiffs' argument.

The plaintiffs also contend that the forum-selection clause is unenforceable because the plaintiffs' contractual and noncontractual causes of action do not entirely "arise" within the scope of the Agreement, thus not triggering the forum-selection provision. The crux of the plaintiffs' contractual claims is that CCH breached the Agreement and violated its confidential relationship with TSG by designing and developing a legislative database with State Net using confidential information that it obtained from TSG. Therefore, there is no question that the essence of the plaintiffs' contractual claims arise under the Agreement.

■ The plaintiffs, nevertheless, argue that the Agreement's forum-selection clause is inapplicable to their contractual claims because these claims are partly premised on facts falling outside of the scope of the Agreement. Specifically, the plaintiffs assert that the defendants misappropriated a copy of TSG's computer program, which Clarkson installed on a CCH computer in Chicago. Because Clarkson was a nonparty to the Agreement, the plaintiffs suggest that the forum-selection clause does not apply to those claims concerning Clarkson. The Court disagrees.

Courts have ruled that "a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses." *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir.1988) (citation omitted). Therefore, even though Clarkson is not a signatory to the Agreement, his relationship with the plaintiffs and the defendants is so inextricably intertwined that he should be subject to the forum-selection clause. *Id.* (forum-election clause applied to nonparties because their alleged conduct was "so closely related to the contractual relationship"); *see also Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F.Supp. 1427, 1434 (N.D.Cal.1997).

■ In a parallel argument, the plaintiffs assert that the forum-selection clause does not pertain to the plaintiffs' claims for negligent misrepresentation and actual fraud because these claims do not arise under the Agreement.

In its complaint, TSG alleges that CCH represented that it would make a substantial investment in NationBase. In reliance on these purported representations, TSG devoted significant financial resources and time developing and refining the software needed to gather, sort and distribute legislative data. In fact, the Agreement drafted by CCH attests that "TSG ha[d] been investing substantial capital, time, expertise, and effort in creating new microcomputer software services and related services, products, and technology...." TSG also intimates that it readily provided CCH with substantial confidential and proprietary information because it expected CCH to invest in NationBase.

It, thus, appears that the representations allegedly made by CCH prior to and upon entering the contract are undoubtedly relat-

ed to the genesis of the Agreement and have a significant bearing on the plaintiffs' non-contractual claims. Again, because these claims arise out of the parties' contractual relationship and implicate the Agreement, they are subject to the forum-selection clause. *See Hoffman v. Burroughs Corp.*, 571 F.Supp. 545, 547 (N.D.Tex.1982) (plaintiff's "claims for fraudulent inducement into contract and breach of warranties impliedly made upon entering an agreement are undoubtedly related to that agreement" and thus subject to the forum-selection clause); *see also Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944 (3d Cir. 1988) (plaintiffs' noncontractual claims were subject to the forum-selection clause because the claims stemmed from the parties' contractual relationship); *Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 72 (Tex.App.–Dallas 1996, no writ) (plaintiffs' claims for negligent misrepresentation, violations of the DTPA, fraud, and gross negligence were dismissed pursuant to the forum-selection clause because "the claims arise out of the parties' contractual relations and necessarily implicate the contract's terms").

■ Finally, the plaintiffs argue that the forum-selection clause is unenforceable because the Agreement has expired. A similar argument was rejected in *YWCA v. HMC Entertainment, Inc.*, No. CIV. A. 91–7943, 1992 WL 279361, *1 (S.D.N.Y. Sept. 25, 1992). In *YWCA*, the court considered a choice-of-forum provision requiring that "any litigation arising under this agreement shall be commenced in the Federal District Courts in California" *Id.* at *1. The plaintiff argued that the provision was unenforceable because the agreement had expired by its own terms on March 31, 1991. *Id.* at *3. The *YWCA* court found the plaintiffs arguments unavailing and wrote:

> Even though the contract has expired, plaintiff's claims for a declaratory judgment with respect to defendant's potential unfair competition, trademark infringement, misappropriation and implied contract claims involve rights arising out of the contract that defendant might assert against plaintiff. Plaintiff's entire business relation with defendant with respect to the

proposed award program stemmed from the contract between the two parties. Any determination with respect to plaintiff's claims will require consideration of the contract and of the parties' respective rights pursuant to the contract. Therefore, it is clear that plaintiff's action arises pursuant to the contract.

*Id.* Similarly, this Court has determined that the plaintiffs' claims directly and indirectly arise from the Agreement. Though the Agreement has expired, resolution of the plaintiffs' claims is dependent, in part, on an evaluation of the parties' rights and obligations arising under the Agreement. Therefore, the Court finds the plaintiffs' argument without merit.

Now that the Court has determined that the Agreement's forum-selection clause is valid and enforceable, it will next consider whether transferring this suit accords with the requirements set forth in 28 U.S.C. § 1404(a). *Stewart*, 487 U.S. at 32, 108 S.Ct. at 2245 (section 1404(a) provides the analytical framework for adjudicating a motion to transfer based on a forum-selection clause).

### B. Transferring Venue Pursuant to 28 U.S.C. § 1404(a)

■ Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1996). Under section 1404(a), a forum-selection clause is not to be given either "dispositive consideration" or "no consideration," but it should be "a significant factor that figures centrally in the [Court's] calculus." *Stewart*, 487 U.S. at 29, 31, 108 S.Ct. at 2244. The plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum provision when it is deemed valid. *Carnival Cruise Lines*, 499 U.S. at 595, 111 S.Ct. at 1528 (moving party bears a "heavy burden of proof" of establishing the serious inconvenience of the contractual forum).

■ The plaintiffs have not argued or offered any evidence showing that transferring this case would seriously inconvenience both

the plaintiffs and their prospective witnesses. Even if they had proffered some evidence in this regard, the plaintiffs would have needed to demonstrate exceptional circumstances for this Court to have denied the transfer on the grounds of inconvenience. *See Marklyn Controls Supply v. Pall Trinity Micro Corp.*, 862 F.Supp. 140, 141 (W.D.Tex.1994) (although it may be expensive and inconvenient to litigate this suit in another forum, the plaintiff should have considered this prior to entering into the contract); *see also Huntingdon Eng'g & Envtl. Inc. v. Platinum Software Corp.*, 882 F.Supp. 54, 58 (W.D.N.Y. 1995) (courts have noted that " '[m]ere inconvenience and expense of traveling are not, standing alone, adequate reasons to disturb the parties' contractual choice of forum.' " (citations omitted)). Moreover, the Court is not aware of any other factor or consideration that would render a transfer to Illinois unreasonable.

The plaintiffs, however, argue that the motion to dismiss should be denied because the interests of justice militate that this case be consolidated with the *NationBase, Inc. v. Texas Source Group* lawsuit pending in the Southern District of Texas. In the *NationBase* lawsuit, NationBase seeks a determination that it is the "rightful owner of all or part of the trade secrets, confidential information, intellectual property and other property [related to the legislative database] and all derivative works developed by TSG." The plaintiffs are concerned that they may possibly be exposed to conflicting findings if the Court transfers this action to Illinois and separate trials are held.

It is true that justice would be best served by consolidating the cases and trying them together, but the defendants "should not be deprived of the benefit of [their bargain]— namely the forum-selection clause—to achieve this goal." *Faberge USA, Inc. v. Ceramic Glaze, Inc.*, No. CIV.A.87–5780, 1988 WL 31853, at *3 (S.D.N.Y. Mar. 28, 1988); *see also Stewart*, 487 U.S. at 33, 108 S.Ct. at 2245 (Kennedy, J., concurring) ("Courts should announce and encourage rules that support private parties who [agree to forum-selection clauses] because it protects parties "legitimate expectations and furthers vital interests of the justice sys-

tem."). Moreover, the Court "presumes that the parties are aware of the consequences of having two actions arising out of the same nucleus of facts pending in separate forums. It is up to the parties to proceed, accordingly, to avoid any res judicata or collateral estoppel problems." *Manufacturing & Mktg. Concepts, Inc. v. Southern California Carbide*, 920 F.Supp. 116, 120 (N.D.Ill.1996) (court declined to "contravene the forum selection clause" by consolidating two cases that arose out of the same nucleus of facts).

The Court accordingly finds the plaintiffs' argument unavailing.

## VI. CONCLUSION

In light of the foregoing discussion, it is clear that the plaintiffs have not met the "heavy burden" of establishing that the forum-selection clause is invalid or that transferring this action would be unfair or unreasonable. In fact, the Court finds that requiring the plaintiff to litigate this matter in Illinois, the contractually chosen forum, is not so "gravely difficult and inconvenient that [the plaintiffs] will for all practical purposes be deprived of [their] day in court." *Bremen*, 407 U.S. at 18, 92 S.Ct. at 1917.

The Court, however, denies the defendants' motion to dismiss for improper venue because it sees no benefit in dismissing this suit only to have the plaintiffs subsequently refile the action in Illinois. *Cf. Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 594 (E.D.Vir.1992) ("Transfer would facilitate a more expeditious resolution of the merits of the controversy in a concededly proper forum and would avoid the costs and delay that would result from dismissal and refiling . . . ."). Rather, the Court concludes that transferring the suit would be the more efficacious and efficient resolution of the defendants' motion.

The Court, accordingly, grants the defendants' motion to transfer this action to the United States District Court for the Northern District of Illinois in accordance with the Agreement's choice-of-forum provision.

It is so Ordered.